# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THANH TRI TA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CIV-25-1256-PRW |
| | ) | |
| U.S. IMMIGRATION CUSTOMS AND ENFROCEMENT, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

Before the Court is pro se Petitioner Thanh Tri Ta's Petition for Writ of Habeas Corpus (Dkt. 9). On December 9, 2025, Magistrate Judge Shon T. Erwin issued a Report and Recommendation recommending that the Court grant Petitioner's request for habeas relief and order his immediate release from custody subject to the terms of his unlawfully revoked Order of Supervision. For the following reasons, the Court declines to adopt the Report and Recommendation (Dkt. 15) and **DENIES** the Petition (Dkt. 1).

## *Background*

Mr. Ta is a Vietnamese citizen who entered the United States in 1985. In 1986, he was granted lawful permanent resident status. But in 1992 Mr. Ta was convicted of sexual assault in Texas and sentenced to five years of incarceration. Following his term of imprisonment, ICE ordered Mr. Ta's removal. The government then spent the next three years attempting to deport Mr. Ta to Vietnam, however, those efforts failed when the government was unable to obtain the necessary travel documents from Vietnam's

1

government. Accordingly, ICE released Mr. Ta upon his posting of a $5,000 bond in 2000. In 2007, ICE issued Mr. Ta an Order of Supervision and then canceled his bond in 2011.

Mr. Ta's was detained again on September 19, 2025. Mr. Ta claims that his detention is unlawful because: (1) the government cannot demonstrate he will likely be removed to Vietnam in the foreseeable future, so his detention violates the Fifth Amendment of the U.S. Constitution, and (2) the government failed to comply with the procedural requirements of 8 C.F.R. § 241.13(i)(2)–(3).[1] As remedies, Mr. Ta asks this Court to reinstate his Order of Supervision; order ICE to release him; prohibit ICE from re-detaining him unless it first establishes that Vietnam's government will, in the reasonably foreseeable future, issue the travel documents necessary for his deportation; and prohibit ICE from deporting him to a country other than Vietnam.[2]

### *Legal Standard*

Pursuant to 8 C.F.R. § 241.13(i)(2):

> The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph

---

[1] The government has promulgated two relevant regulations concerning the release of noncitizens who are subject to a final removal order: 8 C.F.R. §§ 241.4 and 241.13. These regulations also control the revocation of a noncitizens' release. Both § 241.4(l)(1) and § 241.13(i)(3) require that, upon revocation of release, noncitizens receive notice of why their release was revoked and an informal interview to respond to the reasons for revocation. However, under § 241.4(l)(2), the text does not explicitly require notice and informal interviews for revocations under this subsection. For purposes of the Petition, the Court assumes, without deciding, that Mr. Ta is correct that he should have received notice and an informal interview.

[2] Supp. (Dkt. 9), at 2.

(h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.

Additionally, 8 C.F.R. § 241.13(i)(3) states:

Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

Other regulations confirm that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."[3] And rape or sexual abuse of a minor is an "aggravated felony[.]"[4]

Under normal circumstances, the government must remove an alien within 90 days of the issuance of a final order of removal.[5] Upon failure to remove within 90 days, the alien is subject to supervision,[6] but is still removable and "may be detained beyond the removal period."[7] While detainees may not be detained indefinitely, the government may hold them until detention becomes unreasonable, "measur[ing] reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment

---

[3] 8 U.S.C. § 1227(a)(2)(A)(iii).

[4] 8 U.S.C. § 1101(a)(43)(A).

[5] 8 U.S.C. § 1231(a)(1)(A).

[6] 8 U.S.C. § 1231(a)(3).

[7] 8 U.S.C. § 1231(a)(6).

3

of removal."[8] Further, the Court must "give expert agencies decisionmaking leeway in matters that invoke their expertise,"[9] and will "listen with care when the Government's foreign policy judgments, including, for example, the status of repatriation negotiations, are at issue[.]"[10]

### *Discussion*

**I.    This Court has subject matter jurisdiction over the Petition.**

The Report and Recommendation first recommends that the Court finds that it has subject matter jurisdiction to consider the Petition. The government objects to the finding of jurisdiction on all claims except Mr. Ta's request for release pursuant to *Zadvydas v. Davis*. Specifically, the Government asserts that "this Court lacks jurisdiction to consider the validity of Mr. Ta's re-detention in order to effectuate his removal."[11] Thus, the government argues that Mr. Ta's regulatory argument (i.e., that ICE failed to comply with 8 C.F.R. § 241.13) is an attack on the validity of his re-detention, which falls within the scope of the INA's jurisdiction-stripping statute, 8 U.S.C. § 1252(g).

Federal courts lack subject-matter jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien

---

[8] *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

[9] *Id.* at 700.

[10] *Id.*

[11] Opp. (Dkt. 16), at 2.

under this chapter."[12] Commencement, adjudication, and execution "represent the initiation or prosecution of various stages in the [removal] process," where "[a]t each stage the Executive has discretion to abandon the endeavor."[13] As such, § 1252(g) is a "discretion-protecting provision" meant to prevent "deconstruction, fragmentation, and hence prolongation of removal proceedings."[14] Nevertheless, § 1252(g) encompasses the Attorney General's nondiscretionary decisions as well.[15]

Despite its seemingly wide-ranging scope, § 1252(g) does not cover all claims arising from deportation proceedings. "A removal proceeding is ordinarily 'the sole and exclusive procedure for determining whether an alien may be … removed from the United States.'"[16] And the Supreme Court has determined that detention is "necessarily" a part of the removal process.[17] Yet, the Supreme court in *Reno*, cautions against a broad interpretation of § 1252(g)'s three buckets. And a little over a year after *Reno*, in *Zadvydas*,

---

[12] 8 U.S.C. § 1252(g); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders'" (quoting 8 U.S.C. § 1252(g) (emphasis in original))).

[13] *Reno*, 525 U.S. at 483.

[14] *Id.* at 487.

[15] *Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017).

[16] *Wei v. Mukasey*, 545 F.3d 1248, 1250 (10th Cir. 2008) (quoting 8 U.S.C. § 1229a(a)(3)).

[17] *Carlson v. Landon*, 342 U.S. 524, 538 (1952); *see Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013) ("Securing an alien while awaiting a removal determination constitutes an action taken to commence proceedings.") (per curiam).

the Supreme Court greenlit Fifth Amendment challenges to post-removal-period detention.[18]

This Court recently commented in *Sosa v. Holt* that it "harbor[ed] serious doubts over whether it has jurisdiction" over a petitioner's claim "that ICE has acted unlawfully by detaining him pursuant to § 1225(b)(2)" and not § 1226.[19] In *Sosa*, this Court said that by attacking the statutory applicability of § 1225(b)(2), which requires detention, and requesting a detention hearing pursuant to § 1226, which does not require detention, the petitioner is "necessarily [] challenging the decision to detain him in the first place."[20] This case seems no different. Mr. Ta's regulatory challenge, coupled with his request for release from custody, is inherently an attack on ICE's decision to detain him, and, by extension, ICE's execution of his removal order.

Painting Mr. Ta's challenge as an attack on ICE's *authority* to detain him does not necessarily solve the jurisdictional issue. As the Eleventh Circuit expressed, attempts to re-characterize certain types of challenges as attacks on statutory authority still

> amount to an attack on the government's execution of their removal orders. That runs afoul of § 1252(g): we do not have jurisdiction to consider "any" cause or claim brought by an alien arising from the government's decision to execute a removal order. If we held otherwise, any petitioner could frame his or her claim as an attack on the government's *authority* to execute a removal order rather than its *execution* of a removal order. And that sleight of hand would gut the jurisdictional limits set by Congress.[21]

---

[18] *Zadvydas*, 533 U.S. at 688.

[19] *Sosa v. Holt*, No. 25-1257, 2026 WL 36344, at *2 (W.D. Okla. Jan. 6, 2026).

[20] *Id.*

[21] *Camarena v. Director, Immigration and Customs Enforcement*, 988 F.3d 1268, 1273–74 (11th Cir. 2021) (internal citations omitted) (emphasis in original); *see Gupta*, 709 F.3d at 1065 (finding that § 1252(g) strips federal courts of jurisdiction over an alien's claims

Other Circuits have come to the same conclusion in similar circumstances.[22] But even assuming that subject matter jurisdiction exists, Mr. Ta's claims fail on the merits.

## II.     Failure to comply with 8 C.F.R. § 241.13(i)(2)–(3) is at most harmless error.

The harmless error standard applies in deportation[23] and administrative cases.[24] Accordingly, it is Mr. Ta's burden to show that the government's failure to abide by its own regulations prejudiced him.[25] The Court finds that Mr. Ta failed to carry this burden.

Mr. Ta claims the arresting officer told him he was arrested due to his final removal order and that he was not informally interviewed.[26] It's unclear exactly what happened when Mr. Ta was re-detained because the government does not address whether Mr. Ta received notice or an informal interview upon revocation of his release. Instead, the

---

that ICE wrongfully searched his home, seized his property, and detained him) (per curiam).

[22] *See Silva*, 866 F.3d at 942 (finding that § 1252(g) stripped the district court of jurisdiction to hear plaintiff's claims brought under the Federal Tort Claims Act and Constitution after ICE failed to follow 8 C.F.R. § 1003.6(a)); *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021) (holding that § 1252(g) strips federal courts of jurisdiction where petitioner challenges ICE legal authority to execute removal orders that are pending administrative review); *Foster v. Townsley*, 243 F.3d 210, 214–15 (5th Cir. 2001) (finding that federal courts have no jurisdiction under § 1252(g) to consider petitioner's argument that ICE's decision to execute his removal was unlawful due to non-discretionary regulations requiring that his deportation is stayed).

[23] *Nazaraghaie v. I.N.S.*, 102 F.3d 460, 465 (10th Cir. 1996) (citations omitted).

[24] *WildEarth Guardians v. Bureau of Land Management*, 870 F.3d 1222, 1238–39 (citations omitted).

[25] *See Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993) (holding that errors in administrative proceedings do not call for reversal without plaintiffs demonstrating that such errors produced prejudice).

[26] Pet. (Dkt. 3), at 6.

government asserts that any alleged regulatory deficiency does not prejudice Mr. Ta. The Court agrees and finds that ICE's failure to follow § 241.13(i)(2)–(3) is harmless error.

Throughout the litigation of this matter, Mr. Ta has been provided complete notice of why his release was revoked (i.e., his valid removal order and a change of circumstances indicating there is a significant likelihood he can be removed). Additionally, he's had ample opportunity to respond to the government's notices and to present evidence in response. Of note, the government submitted an affidavit from Deportation Officer George McGettrick, stating every reason why he believes Mr. Ta can now be removed to Vietnam in the foreseeable future.[27] This affidavit, the government's briefing, and the arresting officer's original statement have provided Mr. Ta with sufficient notice of why he is being detained. Further, the habeas process has also cured ICE's failure to provide an informal interview because Mr. Ta has now had multiple chances in front of this Court and the government to contest the revocation of his release. Thus, ICE's lack of compliance with § 241.13 has not prejudiced Mr. Ta and is therefore harmless error.

III.  **Even if the government failed to comply with 8 C.F.R. § 241.13(i)(2)–(3), and such noncompliance were prejudicial, the Court a writ of habeas corpus is not an appropriate remedy.**

This Court recently addressed this matter in *Bahadorani v. Bondi*, in which it said:

Habeas relief is reserved for errors constitutional in scale. "The Supreme Court [has] made clear that error regarding one's confinement does not mean that release is the appropriate remedy." Petitioner has failed to show that the appropriate remedy for ICE's regulatory violations is a writ of habeas corpus. There is no relief that this Court could offer, since Petitioner has now been adequately provided notice as to the reason for his revocation and detention,

---

[27] Decl. of George McGettrick (Dkt. 13-1), ¶¶ 9–14.

he has been provided a forum to rebut the reasons for his detention, and it is still the case that Petitioner is statutorily removable. Every procedural wrong that Plaintiff could conceivably allege as a result of the government's violations of 8 C.F.R. § 241.13(i)(2)–(3) has been righted by the very existence of this habeas proceeding. At best, the Court could order Petitioner released from detention for failure to follow 8 C.F.R. § 241.13(i)(2)–(3), but that does not change the fact that Petitioner is still removable and could promptly be served with a notice of revocation, detained, and provided a brief interview. A do-over in this case would be wasteful.[28]

The Court's reasoning in *Bahadorani* applies in this case. Ordering Mr. Ta's release from custody based on a violation of § 241.13 would be both inappropriate.

## IV.     The government has not violated the Fifth Amendment Due Process Clause.

With respect to immigration proceedings, Mr. Ta has been detained twice. The first detention exceeded six months, but his current detention has yet to exceed six months. For his second bout of detention, the government detained Mr. Ta on September 19, 2025, and he filed his Petition on October 23, 2025.[29]

The government argues that Mr. Ta's due process argument is unripe because only 34 days have elapsed between his re-detention and the filing of his habeas petition, meaning Mr. Ta's current detention is significantly shorter than *Zadyvydas*'s presumptively constitutional six-month detention period. However, the government does not cite any legal authority to support the proposition that the Court should only consider the current length of re-detention and not the total period of detention. For that reason, the Court turns to

---

[28] *Bahadorani v. Bondi*, CIV-25-1091-PRW, 2025 WL 3048932, *4 (W.D. Okla. Oct. 31, 2025).

[29] *See Ravenswood Inv. Co., L.P. v. Avalon Correctional Services*, 651 F.3d 1219, 1223 (10th Cir. 2011) (citing *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957)) ("Federal jurisdiction is determined based on the facts as they existed at the time the complaint was filed.")

whether the Government has "respond[ed] with evidence sufficient to rebut" Mr. Ta's allegation that there is no significant likelihood of removal in the foreseeable future.[30]

The Court finds there is a substantial likelihood that Mr. Ta will be removed from the United States in the reasonably foreseeable future. Officer McGettrick—a government official—has provided sworn testimony that he "submitted a travel document request" to Vietnam for Mr. Ta, "Vietnam has issued travel documents for every travel document request [Enforcement and Removal Operations] has submitted since February 2025," "ERO is averaging at least two charter flights of removals to Vietnam per month," and "as of September 11, 2025, ERO has removed 569 Vietnam citizens to Vietnam."[31]

The only evidence to suggest that ICE will not be able to deport him in the reasonable future is the fact Mr. Ta could not be deported over 20 years ago. If former delay alone could rebut "Vietnam's willingness to accept its citizens" and "the number of successful removals ERO has made to Vietnam" in 2025,[32] it's unclear what the government could present as a sufficient change in circumstances. And if the government could not detain Mr. Ta "until they had travel documents, a flight planned, or even applied for travel documents," then "this burden [would be] inconsistent with the deference afforded to the [government][.]'"[33] It is the Court's responsibility to give "due deference

---

[30] *Zadvydas*, 533 U.S. at 701.

[31] Decl. of George McGettrick (Dkt. 13-1), ¶¶ 9–14; ERO is a directorate within ICE that manages the immigration process.

[32] *Id.* ¶ 14.

[33] *Nguyen v. Noem*, 797 F. Supp. 3d 651, 669 (N.D. Tex. Aug. 10, 2025).

to the Executive's foreign policy considerations" and its obligation "not [to] substitute its own or another party's analysis of the state of the world for the Executive's in this context."[34] Accordingly, the government has shown that there are changed circumstances that make removal substantially likely in the reasonably foreseeable future. The government therefore has not violated the Fifth Amendment.

**V.      Mr. Ta's request that the Court bar the government from removing him to a third country is based on pure speculation.**

In Mr. Ta's supplement to his Petition, he requests that this Court prevent ICE from deporting him to a third country without notice and an opportunity to be heard.[35] However, neither the Petition nor the supplement indicate whether ICE has any non-speculative plans to remove Mr. Ta to a country other than Vietnam. In fact, Officer McGettrick's affidavit does not mention any intent that Mr. Ta will be deported elsewhere. The Court finds that there is presently no risk that ICE will remove Mr. Ta to a third country. Thus, Mr. Ta lacks standing to bring such challenge because he has not established a concrete and particularized injury.[36]

## *Conclusion*

For the foregoing reasons, the Court declines to adopt the Report and Recommendation (Dkt. 15) and **DENIES** the Petition (Dkt. 1). This decision renders the

---

[34] *Bahadorani*, 2025 WL 3048932, *4.

[35] Supp. (Dkt. 9), at 2.

[36] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Motion for Temporary Restraining Order (Dkt. 2) and Motion to Appoint Counsel (Dkt. 6) moot. A separate judgment will follow.

**IT IS SO ORDERED** this 26th day of February 2026.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

12